***********
The undersigned have reviewed the prior Opinion Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties before the hearing in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. An employment relationship existed between plaintiff and defendant-employer at the time of the injury.
2. Insurance Company of the State of Pennsylvania was the carrier on the risk for the employer at the time of the injury.
3. The date of injury was January 23, 1993.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the injury, the employer employing the requisite number of employees to be bound under the provisions of the Act.
5. Plaintiff's average weekly wage at the time of the injury was $179.13 and her compensation rate is $119.42.
6. Plaintiff sustained a compensable injury to her low back and neck on the stipulated date of injury, and the defendants admitted compensability for that injury on a Form 21, approved by the Industrial Commission on April 7, 1993.
7. Defendants paid plaintiff total disability compensation at the stipulated compensation rate for the injury of January 23, 1993 until she returned to work on or about April 8, 1994, and they thereafter, paid partial disability compensation for 10% permanent partial disability of the back pursuant to a Form 26 approved by the Industrial Commission on March 30, 1994.
8. The parties mediated this case on May 7, 2002 and defendants paid the entire mediator's fee of $375.00, thereby advancing the plaintiff's share of $196.55 against any award that the plaintiff may receive.
9. The parties agree that the issue raised by plaintiff regarding payment of medical expenses for treatment of fibromyalgia and low back pain was resolved at mediation and that the defendants agreed to reimburse plaintiff for payment of medical expenses for treatment of fibromyalgia and low back pain, and that the defendants would continue to authorize and pay for such treatment of fibromyalgia and low back pain with Dr. Gordon Senter until the issue of causation is resolved at an evidentiary hearing.
10. The parties agree the issues to be answered by the hearing commissioner are (1) whether there is a causal relationship between plaintiff's fibromyalgia and low back pain and her compensable injury by accident on January 23, 1993; and (2) if so, what benefits is she entitled to receive for such condition under the Workers' Compensation Act.
11. The parties stipulated into evidence a packet of medical records and reports as Stipulated Exhibit 1 and a packet containing the I.C. Forms in the file as Stipulated Exhibit 2.
12. The deposition of Dr. R. Gordon Senter has been received and admitted into evidence.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff sustained a compensable injury by accident to her back on January 23, 1993 when she was lifting a dog kennel to a riser above her head. Plaintiff testified that the dog kennel weighed approximately ten pounds and that she felt a pain in her neck, shoulders and arms.
2. Plaintiff's initial treatment was at RoMedical Center and she was diagnosed with a cervical and thoracolumbar strain. Plaintiff was treated conservatively at RoMedical through October 18, 1993 at which time she was seen by Dr. Steele at Salisbury Orthopaedics. Dr. Steele's impression was that plaintiff had cervical and lumbar pain and he did not feel that he had anything else to offer her medically.
3. Defendants accepted plaintiff's claim as compensable pursuant to a Form 21. Defendants paid plaintiff total disability compensation at the stipulated compensation rate for the injury of January 23, 1993 until she returned to work on or about April 8, 1994, and they thereafter, paid partial disability compensation for 10% permanent partial disability of the back pursuant to a Form 26 approved by the Industrial Commission on March 30, 1994.
4. On November 14, 1995, over two and a half years after the injury, plaintiff presented to Dr. Gordon Senter, a rheumatologist in Salisbury, for a consultation regarding her back pain. Dr. Senter took a history of an injury at Wal-Mart occurring when plaintiff was lifting a set of five kennels weighing approximately 100 pounds up onto a rack. Plaintiff presented with chronic neck pain and pain in her back going down her left leg. Dr. Senter did not find any neurological abnormalities and noted that plaintiff's previous diagnostic studies had been interpreted as normal by Dr. Lyerly. Dr. Senter diagnosed fibromyalgia and he has managed plaintiff's care from November of 1995 through the present. As to her complaints of back pain, Dr. Senter explained that plaintiff's pain was part of the expression of her fibromyalgia.
5. Dr. Senter said that he was not treating plaintiff for her work injury as that injury would have healed before he saw plaintiff in November of 1995. Instead, Dr. Senter treated plaintiff for the fibromyalgia that he described as a "disease process that is ongoing" which plaintiff's personality and approach to life has helped foster. Dr. Senter testified that there are no known causes for fibromyalgia. Dr. Senter described plaintiff as a tense, anxious person and stated that fibromyalgia frequently can occur in situations where a person is chronically tense.
6. Dr. Senter did not know what caused plaintiff's fibromyalgia and testified there is no known cause for fibromyalgia. Notably, Dr. Senter stated that his opinion as to causation was "purely speculative".
7. Dr. Senter never offered an opinion that plaintiff's condition was causally related to her injury at Wal-Mart to any degree of medical certainty.
8. Dr. Senter also did not know whether plaintiff would have developed fibromyalgia "but for" her injury on January 23, 1993.
9. Dr. Senter acknowledged that there are several other potential causes of plaintiff's condition. First, Dr. Senter stated that fibromyalgia can occur spontaneously. In fact, he noted that plaintiff was an "unusually tense person" and that many such tense people develop fibromyalgia over time spontaneously. Dr. Senter also testified that genetics can play a role in the development of fibromyalgia and explained that plaintiff's father has an inflammatory condition of the blood vessels and muscles. Dr. Senter explained that an inflammatory condition is a differential diagnosis that can possibly cause symptoms of fibromyalgia.
10. In addition to spontaneous onset and genetics, Dr. Senter mentioned metabolic disorders, viral illnesses and arthritic conditions as other possible causes of fibromyalgia. Moreover, Dr. Senter noted that plaintiff had many of the "lifestyle personality" characteristics that are "almost universal" in fibromyalgia patients in that she was tense, driven and had problems with nonrestorative sleep. Each of the aforementioned factors tend to suggest that plaintiff's fibromyalgia cannot reliably be attributed to her injury at Wal-Mart.
11. Dr. Senter opined that plaintiff's condition was triggered by her work injury, based upon (1) the temporal relationship between the work incident and the onset of her symptoms, and (2) the fact that the triggering event as described was of sufficient magnitude to cause injury to the muscles.
12. Opinion testimony relying on the maxim of "post hoc, ergo propterhoc" is not competent evidence of causation. Dr. Senter also was relying on an inaccurate history when he indicated that plaintiff's January 1993 incident was a sufficient trauma to cause muscular injury. Dr. Senter understood that plaintiff was trying to lift five dog houses weighing a combined one hundred pounds at one time when she was injured. However, plaintiff testified and the Full Commission so finds that she was lifting one dog kennel weighing approximately ten pounds when she was injured.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on January 23, 1993 to her back and neck that arose out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Upon approval by the Commission of a Form 21, Agreement for Compensation, the employee receives the benefit of a presumption that she is totally disabled, and her initial burden of proving a disability is therefore relieved. Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 205, 472 S.E.2d 382, 386 (1996). Once disability is proven, there is a presumption that it continues until the employee returns to work at wages equal to those she was receiving when the injury occurred. Watkins v. Central Motor Lines, 279 N.C. 132, 137,181 S.E.2d 588, 592 (1971); Watson v. Winston-Salem Transit Authority,92 N.C. App. 473, 476, 374 S.E.2d 483, 485 (1988).
3. However, the presumption of continuing disability is rebuttable.Stone v. GG Builders, 346 N.C. 154, 157, 484 S.E.2d 365 (1997). Medical and other evidence tending to show that the plaintiff's claims are not credible, may be shown to rebut the presumption of disability.See Stone at 157-8. See also, Harrington v. Adams-Robinson Enterprises,349 N.C. 218, 504 S.E.2d 786 (1998). Although, pursuant to the Form 21, defendants had the burden of proving that plaintiff was no longer disabled due to her compensable injury by accident, defendants have rebutted the presumption of disability with evidence that plaintiff gave an inaccurate history to Dr. Senter and testimony that establishes that there is no causal link between plaintiff's compensable injury by accident and her current condition. Therefore, the presumption that plaintiff's fibromyalgia is causally related to her compensable injury by accident has been successfully rebutted by defendants.
4. Plaintiff is not entitled to medical compensation for treatment of fibromyalgia, since such treatment is not necessary to effect a cure, give relief, or lessen disability from a condition causally related to plaintiff's occupational injury. Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993). The greater weight of the evidence fails to establish that the condition for which plaintiff seeks medical compensation is causally related to her injury by accident of 1993.
5. Even assuming arguendo that plaintiff's fibromyalgia was "triggered" by her injury, such testimony is not competent evidence of medical causation to support an award of compensation. Brewington v. Rigsbee AutoParts, 69 N.C. App. 169, 316 S.E.2d 336 (1984).
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 ORDER
1. Plaintiff's claim for additional workers' compensation benefits must be, and the same therefore is, hereby DENIED.
2. Each party shall bear its own costs.
This the 17th day of December 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER